# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| NOE GARCIA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil No. 10-1274-CV-W-FJG |
| ) | Crim. No. 08-0311-02-CR-W-FJG |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## ORDER

Currently pending before the Court is Petitioner's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (Doc. No. 1).

### I. BACKGROUND

On November 18, 2008, a grand jury indicted Noe Garcia on three counts of a fifteen count indictment. Garcia was charged with: conspiracy to distribute 500 grams or more of methamphetamine, 5 kilograms or more of cocaine, and 50 kilograms or more of marijuana (Count One); distribution of 5 grams or more of methamphetamine (Count Two); and unlawful entry into the United States (Count Twelve). On July 15, 2009, Garcia entered into a plea agreement with the Government and pled guilty to both Counts One and Twelve. On February 10, 2010, the Court dismissed Count Two of the indictment at the Government's request. Only Count One is at issue here.

At his Change of Plea Hearing, Garcia stated that he understood the terms of the plea agreement and the applicable statutory range of punishment, without the assistance of an interpreter. (Plea Transcript, p. 5-7). Garcia further stated that it was

still his decision to plead guilty. (Plea Transcript, p. 11). At sentencing, defense counsel, Steven Willibey, objected to the Presentence Investigation Report, arguing Garcia was eligible for a two-level sentence reduction as a minor participant in the conspiracy. The Court overruled this objection. (Sentencing Transcript, p. 20). The statutory range for Count One was 120 months to life imprisonment. The guideline range for Count One was 135 to 168 months. The Court sentenced Garcia to the low end of the guideline range, 135 months.

On December 20, 2010, Garcia filed the instant § 2255 motion. Garcia asserts that: 1) Defense counsel was ineffective for failing to explain the true nature of the plea agreement, including pleading guilty to collective amounts of drugs sold in the conspiracy; 2) Defense counsel was ineffective for failing to object to the Court's calculation of Garcia's criminal history; 3) Garcia's sentence exceeded the statutory maximum; and 4) A new affidavit stating Garcia was a minor participant in the conspiracy justifies the Court to reopen his case and grant a two-level reduction.

## II. STANDARD

In order to successfully establish an ineffective assistance of counsel claim, Petitioner must show: 1) Trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence; and 2) The performance prejudiced Petitioner's defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The Court must apply an objective standard and consider all of the circumstances to determine "whether the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. The Court must "indulge a strong presumption that counsel's conduct falls within the wide range of

2

reasonable professional assistance." Id. At 689. There must be proof of a "reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "Unless a defendant makes both showings, it cannot be said that the conviction or the death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687. Additionally, "[w]hen newly discovered evidence is the ground for a § 2255 motion, the district court should apply the same substantive test which governs a motion for a new trial under Fed.R.Crim.P. 33 premised upon the same ground." Lindhorst v. United States, 585 F.2d 361, 365 n.8 (8th Cir. 1978). In Johnson v. United States, the Eight Circuit set out the following five prerequisites to granting a new trial based on newly discovered evidence:

> (a) The evidence must be in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

32 F.2d 127, 130 (8th Cir. 1929); U.S. v. Frye, 548 F.2d 765,769 (8th Cir.1977).

### III. DISCUSSION

**A. Ineffective Assistance of Counsel**

Garcia raises two issues concerning ineffective assistance of counsel: 1) defense counsel's alleged failure to fully explain the plea agreement; and 2) defense counsel's failure to object to Garcia's criminal history calculation.

3

**1) Failure to Explain Plea Agreement**

Garcia argues his defense counsel was ineffective for failing to explain the true nature of the plea agreement offered by the Government. Garcia states he would not have pled guilty to the entire conspiracy, including the conspiracy's collective drug amounts, but for counsel's unprofessional failure to obtain a Spanish interpreter. Thus, Garcia states he suffered prejudice at sentencing.

However, Garcia fails to meet the Strickland requirements. He offers no evidence to show that defense counsel's performance fell below an objective standard of reasonable competence. The record reflects that Garcia fully understood what he was pleading guilty to, including the drug amounts charged to the entire conspiracy. Garcia indicated, on the record, defense counsel explained that Garcia could be held responsible for the actions of others. Garcia also revealed that he referred to a book to gain a further understanding, before explicitly stating "I can be held responsible for all that." (Plea Transcript, p. 8).

Defense counsel's decision not to obtain a Spanish interpreter to explain the plea agreement does not fall below an objective standard of reasonable competence. Considering all of the circumstances, Garcia understood enough English to properly conduct meetings with counsel and understand the plea agreement. Garcia never requested that his attorney bring an interpreter or claimed that he could not understand. The Court specifically asked Garcia if he was able to understand the terms of the plea agreement without the assistance of an interpreter, and he responded, "Yes, I did understand it." (Plea Transcript, p. 7).

4

The Court later asked Garcia if he understood everything discussed in the plea hearing, and Garcia responded, "Yes, everything." (Plea Transcript, p. 11). The Court then asked if it was still Garcia's decision to plead guilty, and Petitioner responded, "Yes, I plead guilty." (Plea Transcript, p. 11).

The record directly contradicts Garcia's claim that he did not understand the true nature of the plea agreement without the assistance of an interpreter. Therefore, this claim is without merit and will be **DENIED**.

**2) Failure to Object to Criminal History Points**

Garcia also argues defense counsel was ineffective for failing to object to the use of one of his prior convictions in the criminal history calculation. Garcia argues he suffered prejudice, because this increased his criminal history points and thus the guideline range for sentencing.

Specifically, Garcia states that it was inappropriate to factor in one of his crimes, as it was committed more than 10 years before the crime in this case. However, the Government points out that the prior sentence's imposition date is the appropriate date to use in calculation. Pursuant to U.S.S.G. § 4A1.2 (e)(2), "any other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted."

The sentence Garcia refers to was imposed on August 17, 1998. This date is well within ten years of the 2006 date listed in the plea agreement as the start of the conspiracy. (Plea Agreement ¶ 3). Defense counsel could not have won any objection to this calculation. Therefore, counsel cannot be considered deficient for failing to make an ultimately invalid objection.

5

Accordingly, this Court hereby **DENIES** both of Petitioner's ineffective assistance of counsel claims.

### B.  SENTENCE EXCEEDED STATUTORY MAXIMUM

Petitioner argues that his plea agreement established specific drug amounts for the multiple drugs that he admitted to selling.  The Plea Agreement states that petitioner was involved in the sale of narcotics to an undercover officer at least four times:

- November 20, 2007 – actual methamphetamine sold was 11.39 grams and .8 kilograms marijuana.

- December 20, 2007 – actual methamphetamine sold was 23.88 grams and 55 grams cocaine.

- January 30, 2008 – actual methamphetamine sold was 15.43 grams and 54.699 grams cocaine.

- February 4, 2008 – actual methamphetamine sold was 15.99 grams and 55.51 grams of cocaine.

- November 6, 2008 – possession of 28 grams of substance containing methamphetamine.

Petitioner argues that he should only be sentenced according to the least charged amount.  He states that the least charged amount was .8 kilograms of marijuana and this carries a maximum sentence of five years.  He argues that when the Court sentenced him to 135 months, this was in excess of the five year maximum for the amount of marijuana he sold and his counsel was ineffective for failing to object to the sentence.

The Government argues that Garcia pled guilty to his part in the conspiracy, the four undercover drug sales which involved 75.69 grams of methamphetamine (actual), 110 grams of cocaine and .8 kilograms of marijuana.  The government states that the amount of these drugs equates to a marijuana equivalency of 5,022.80 kilograms and

6

puts Garcia's base offense level at 34. The Government states that Garcia was sentenced to a term that was contemplated by the plea agreement, and the amount calculated by the PSR which held "Garcia responsible for the four undercover sales and nothing further." (Government's Suggestions in Opposition, pp. 10-11). However, this is incorrect. The drug quantities referenced above equate to a marijuana equivalency of only 1,423.64 kilograms[1], not 5,022.80 kilograms, as was stated in the Presentence Investigation Report and in the Government's opposition. Additionally, during the sentencing hearing, the following exchange took place:

    The Defendant: Okay. Well, really, I did plead guilty, but I had told my attorney that I wasn't guilty of all this stuff, only of what – I was only responsible for what I had done, but I went ahead and pled guilty anyway. He said that if I pled guilty, that they would lower my sentence – that they would lower my sentence, and he came back and said no, you have to – this is what your sentence is going to be, this is what you're looking at. I have never been involved in anything like this, anything like this, and I do feel that – and I thought I was going to be punished for what I did.

    Mr. Willibey: And, Your Honor, if you recall the guilty plea proceeding, we had lengty discussion about Mr. Garcia's responsibility for conduct of other people involved in the conspiracy and I think he understood it at that time.

    The Defendant: Yes, I know that I pled guilty and I have seen over there that some of the people that have pled guilty to conspiracy are only being punished for what they did and not for the entire conspiracy, so why am I responsible for the entire conspiracy and not for what I did?

    The Court: Well, Mr. Garcia, in the view of the court, your involvement in this conspiracy is more than you're willing to accept responsibility for, and that's I guess the best explanation I can give you on that. And I don't intend to spend the rest of my day listening to reasons why you want to back out of this plea. So I'm ready to move forward with sentence. Did you have something you wanted to add, Mr. Marquez?

    Mr. Marquez: Just a couple quick things. Obviously, he's looking at a marijuana equivalent of the cocaine and the methamphetamine and the marijuana together. So, in

---

[1] 66.69 grams meth (actual) = 1333.8 kg marijuana equivalent.
  28 grams meth = 56 kg marijuana equivalent
 165.209 grams cocaine = 33.04 kg marijuana equivalent
Adding up the equivalency amounts, plus the .8 kilograms of marijuana results in a total of 1,423.64 kilograms, not 5,022.80 kilograms.

7

his mind, it's clear that he's thinking I never saw, you know, 5,000 kilograms of marijuana. And I'm not sure how well Mr. Willibey explained that to him, but when you have multiple different drugs, the way the government looks at the amounts and how they figure a fair and reasonable sentence on the guidelines is they take those three different kinds of drugs and make them into a marijuana equivalent. So obviously there was not 5,000 kilograms of marijuana in the case because there was methamphetamine and there was cocaine and they have to take that together and make it into one particular drug, and the easiest way to do that here in the United States is a marijuana equivalent. So that's his first confusion. **The second confusion is we only held him responsible for those four particular deals that are listed in the plea agreement.** He's not held responsible for all the other deals, the 19 deals that his brother did outside of him. There are people in the conspiracy that will get a whole lot more time based on their conduct, **and he is only being held accountable for what he did, those four particular buys, and then when he was arrested with an amount of drugs on him.** So –

The Court: Well, that being the case, it sounds to me he got a pretty good deal, because it sounds to me he could have been held accountable for more than that.

Mr. Marquez: Potentially he could have been. And also by pleading guilty, he lessened his sentence because he got the three levels off for acceptance of responsibility for what he had done.

The Court: So he got the benefit of that and he also got the benefit of not being held accountable for any of the other conspiratory acts which he could have been, as a member of the conspiracy, responsible for.

Mr. Marquez: That is correct Judge. We did give him a break.

(Sentencing Transcript, pp. 27-29)(emphasis added).

During the sentencing hearing, the Government represents that the defendant is only being held responsible for the amount of drugs he sold to the undercover agent. However, as can be seen by the calculations, when Mr. Garcia's amounts are converted to a marijuana equivalency, the amount is much lower than what was represented: 1,423.64 kilograms (based on his sales to the agent) vs. 5,022.80 kilograms (the amount in the PSR and relied upon by the Government). When the lower amount is used, Mr. Garcia's base offense level drops to a 32, rather than a 34. Giving him the same benefit of the three level reduction, leads to an offense level of 29, which when

8

combined with Mr. Garcia's Level III criminal history category, produces a guideline range of 108-135. However, considering the fact that Mr. Garcia is subject to a ten year statutory minimum, the least amount of time he could have been sentenced to would have been 120 months. However, 120 months is 15 months less than what he was actually sentenced to. If the marijuana equivalency amounts had been correctly calculated, there is a reasonable possibility that Mr. Garcia would have received a lower sentence. Accordingly, the Court hereby proposes to re-sentence Mr. Garcia to a sentence of 120 months, unless the Government has any reason why this sentence should not be imposed. The Government should file a response indicating its position on this point on or before **August 15, 2012**.

**C. Consideration of Newly Obtained Affidavit**

Garcia argues that the Court should re-open his case in light of a new affidavit from his brother, who was also a co-defendant in the criminal case. The affidavit serves to inform the Court on Garcia's level of involvement. Garcia states that this new evidence qualifies him as a minor participant, and thus entitles him to a two-level reduction.

Garcia already offered statements that he qualified as a minor participant through an objection to the Presentence Investigation Report. The Court heard his arguments at Sentencing and overruled the objection. (Sentencing Transcript, p. 20). This new affidavit is merely cumulative, as its sole purpose is to add to the prior objection.

Accordingly, Petitioner's request to re-open his case in light of the new affidavit is **DENIED**.

## IV. CONCLUSION

For the reasons stated above, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Doc. No. 1).

As noted above, the Court requests that the Government file a response to the issue of the drug quantity issue on or before **August 15, 2012**. The Court will issue a final decision on that issue after reviewing the Government's response.


Date: <u>July 24, 2012</u>　　　　　　　　　　　　**S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri　　　　　　　　　　　　　Fernando J. Gaitan, Jr.
　　　　　　　　　　　　　　　　　　　　　　　Chief United States District Judge